

FILED

SEP 23 2019

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAMEON PIERRE BEASLEY,<br>DAVID LOPEZ and JESSICA LYNN<br>DENNY,<br><br>Defendants. | CR 18-128-BLG-SPW-2<br><br>ORDER |

Before the Court is Defendant David Lopez's motion to suppress evidence seized from a hotel room in which he was an occupant. For the following reasons, the Court denies the motion.

I.  Facts

On July 6, 2018, Drug Enforcement Administration Special Agents Stacy Zinn-Brittain and Robert Grayson received an alert that a vehicle they were electronically tracking had just arrived at a Billings hotel. The Special Agents responded to the scene and identified the vehicle's occupants, who were known to law enforcement as people involved with drug trafficking. The vehicle's occupants, a man and a woman, appeared to be staying in Room 139.

1

The Special Agents approached Room 139 and knocked on the door. The man answered and allowed the Special Agents into the room. The woman was not present. The Special Agents asked if they could search the room and the man consented. During the search, the Special Agents found some drug paraphernalia. The woman returned to the room shortly after. The Special Agents asked the woman what she had been up to lately, and she explained she and the man had been driving Dameon Beasley, a person law enforcement suspected of major drug distribution, to and from California to traffic drugs. The woman further explained they had just returned from such a trip, and that Beasley was staying right down the hall in Room 136. The woman nervously offered that she was supposed to go to Room 136 very soon to retrieve two ounces of methamphetamine from Beasley to deliver to someone else. At that point, the Special Agents saw an opportunity to conduct a controlled buy and bust Beasley. The Special Agents searched the woman to ensure she didn't have any drugs on her already and then asked the woman to go to Room 136, pick up the methamphetamine, and return to Room 139.

The woman left Room 139 as instructed, and the Special Agents observed her walk down the hall and enter Room 136. A short time later, the Special Agents observed her exit Room 136 and return to Room 139. When she entered Room 139, she gave the Special Agents a bag containing what appeared to be

approximately two ounces of methamphetamine. The Special Agents then discussed a course of action. They believed they had probable cause to get a search warrant for Room 136 and intended to get one, but were concerned that if they waited, more methamphetamine would be distributed out of Room 136. The Special Agents decided they should call for back up, try to get consent to enter the room to search it, and if they couldn't, at least secure the room pending a search warrant.

When backup arrived, the Special Agents and backup officers approached Room 136 and knocked on the door. The outside of the room smelled strongly of burnt marijuana. A woman answered the door. The Special Agents identified themselves as the DEA. When they did, a man in the back of the room began yelling and making agitated movements. The man's yelling and movements caused the Special Agents to become concerned for officer safety so they entered the room to secure it. When they entered the room, the Special Agents observed a handgun by the bedside table in the immediate reach of the man. On the bed was a large package of a white crystalline substance. The man continued to yell and refuse officer demands to raise his hands. The Special Agents and backup officers secured the yelling man, who was later identified as Beasley. While securing Beasley, the Special Agents and backup officers observed another man who appeared to be hiding in the bathroom. The man was later identified as David

Lopez. The Special Agents asked Lopez and the woman who answered the door, later identified as Jessica Denny, to stand outside the room in the hallway. Once the Special Agents and backup officers had Beasley, Lopez, and Denny secured or outside the room, they applied for and were granted a search warrant. The search warrant application included the controlled buy from Room 136 and also the Special Agents' observations when they entered Room 136 to secure it. The search of the room uncovered multiple pounds of methamphetamine.

## II. Discussion

Lopez argues the officers illegally entered and searched Room 136 because they did not have a search warrant when they entered the room and no search warrant exception applies. Lopez asks the Court to suppress the evidence and his statements made after the entry. The government responds Lopez does not have standing to challenge the search because he wasn't a resident or guest of Room 136, exigent circumstances permitted officers to enter the room, and even if the entry was illegal, the exclusionary rule does not apply because of the independent source rule.

The Court does not address Lopez's standing or exigent circumstances because the Court agrees with the government that even if the entry into Room 136 was illegal, the independent source rule prevents suppression of the evidence.

The independent source doctrine permits the admission of evidence obtained via an illegal search where "the challenged evidence has an independent source." *Nix v. Williams*, 467 U.S. 431, 443 (1984). The exception represents an effort to balance society's interest "in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime." *Williams*, 467 U.S. at 443. It endeavors to place the police in the same position they would have been in had no illegal behavior occurred. *Williams*, 467 U.S. at 443. To apply the doctrine in the context of a warrant issued based on illegally obtained information, the court asks (1) whether there was probable cause without the tainted evidence, and (2) whether the officers would have sought a warrant without having seen the tainted evidence. *United States v. Washington*, 700 Fed.Appx. 619, 621 (9th Cir. 2017) (citing *United Statse v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir. 1999)).

Here, the search warrant application contains probable cause even if the tainted evidence is excised based on the following legitimate evidence: (1) agents were notified persons associated with drug trafficking had arrived at a Billings hotel; (2) agents responded to the hotel and observed the suspect individuals; (3) agents made contact with the suspect individuals in Room 139; (4) one of the suspect individuals told agents a source of supply was staying down the hall in Room 136; (5) the suspect individual told agents the source of supply was

expecting her to go to Room 136 to pick up a bag containing two ounces of methamphetamine to deliver to someone else; (6) agents told the suspect individual to go to Room 136, pick up the methamphetamine, and return to Room 139; (7) the suspect individual, as instructed, left Room 139, entered Room 136, and then returned to Room 139; (8) the suspect individual had a bag containing two ounces of methamphetamine which she received from Room 136; (9) the suspect individual said there was a large amount of methamphetamine in Room 136; and (10) when agents approached Room 136, they smelled a strong odor of burnt marijuana coming from the room. Those facts more than establish "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Court finds the officers would have sought a warrant even if they had not seen the tainted evidence. After the controlled buy occurred, the Special Agents' plan was to first try to obtain consent to enter Room 136, and if they couldn't, to secure the room and apply for a search warrant based on the controlled buy and information supplied by the suspect individual. The evidence the agents saw when they entered Room 136—a firearm on the bedside table and methamphetamine on the bed—certainly helped their case for a search warrant, but it's very clear the agents firmly believed a major source of supply was in Room 136 with a large amount of methamphetamine well before they entered it. Based

on that belief, they were going to apply for a search warrant if they could not get consent, which is what they did.

The independent source rule is therefore met here and the exclusionary rule does not apply even if the entry into Room 136 was illegal.

## III. Conclusion and order

Lopez's motion to suppress (Doc. 56) is denied.

DATED this 23rd day of September, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge